UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| RAY GUAJARDO,<br><br>　　Plaintiff,<br><br>v.<br><br>FORMOSA PLASTICS CORP. OF TEXAS,<br><br>　　Defendant. | §<br>§<br>§<br>§<br>§<br>§　　CIVIL ACTION NO. V-04-61<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM & ORDER**

Pending before the Court is Defendant Formosa Plastics Corporation of Texas's Motion for Summary Judgment (Dkt. # 32). Also pending is Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence (Dkt. # 36). The Court, having considered the motions, the responses of the parties, and the applicable law, is of the opinion that the motion to strike should be GRANTED in part and DENIED in part and the motion for summary judgment should also be GRANTED in part and DENIED in part, as outlined below.

**Factual and Procedural Background**

Plaintiff Ray Guajardo began working for Defendant in November of 1992. At the time of his discharge, he held the position of operator in the Ethylene Glycol unit at Defendant's Point Comfort, Texas facility. During his employment with Defendant, Plaintiff agreed to testify in two sex discrimination/pregnancy discrimination cases filed against Defendant. He also agreed to be a witness in support of a coworker's race discrimination complaint filed against Defendant.

In March of 1998, Defendant implemented a sleeping policy that required a supervisor who witnessed an employee sleeping to approach the employee. If the employee raised their head when the supervisor approached, the employee was to be given a final warning. Defendant alleges that it

1

instituted a new policy in August 2002. Under this policy, any supervisor who saw an employee sleeping was required to pull the employee's badge and send the employee home pending investigation and possible termination.

On July 28, 2003, Plaintiff's second line supervisor, Armando Ramirez, accused Plaintiff of sleeping on the job. At approximately 2:00 p.m., Ramirez sent an e-mail to the plant manager Randy Smith, Darren Drastata in human resources, and the unit manager advising them that he had caught an employee sleeping. The email further indicated that the next time any employee was caught sleeping that person would be suspended, pending investigation, and that possible termination might result.

On July 29, 2003, Plaintiff met with Randy Smith and reported to Smith that he believed that his supervisor was retaliating against him by accusing him of sleeping on the job. Plaintiff advised Smith that he was being retaliated against because he had agreed to testify in two employment discrimination suits against Defendant. During the July 29, 2003 meeting, Plaintiff alleges that Smith informed him that he would look into the allegations of retaliation. He further alleges, however, that the investigator assigned to the incident, Bill Laas, was never asked to investigate whether Plaintiff was being treated differently than other employees.

On July 30, 2003, Plaintiff was discharged by Randy Smith for allegedly sleeping on the job in violation of company policy. Plaintiff alleges that since August 2002, when Defendant claims to have reinstated its sleeping policy, at least six other employees have been caught sleeping on the job without being discharged.

Plaintiff filed this suit on July 2, 2004 alleging discrimination based on race and retaliation in violation of Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. § 1981, and The Texas Commission on Human Rights Act.. Defendant filed the pending motion for summary judgment on June 14, 2005, alleging that Plaintiff could not establish a prima facie case for either discrimination

2

or retaliation.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).

## Analysis

**I.      Motion to Strike Summary Judgment Evidence**

As an initial matter, both parties seek to exclude certain portions of the other's summary judgment evidence. Plaintiff seeks to exclude paragraph 10 of the Drastata affidavit as hearsay. Paragraph 10 contains Drastata's recitation of the events observed by Armando Rodriguez on the day that Rodriguez allegedly observed Plaintiff sleeping. It also contains statements relayed to Drastata from Rodriguez. Defendant argues that the statements are not offered for the truth of the matter asserted, but to show Drastata's knowledge or motive and thus are not hearsay. Additionally, Defendant argues that even if the statements are excluded as hearsay, the fact that Ramirez accused Plaintiff of sleeping on the job but did not tell him he was fired remains the same. The Court finds that these statements are being offered to show Drastata's, and therefore Defendant's, motivation in terminating Plaintiff's employment. *See* FED. R. EVID. 801(c); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 n.4 (5th Cir. 1996); *Upshaw v. Dallas Heart Group*, 961 F. Supp. 997, 1001 n.31 (N.D. Tex. 1997). As such, these statements are not being offered for the truth of the matter asserted and therefore will not be excluded.

Defendant first seeks to exclude evidence related to the discharge of Sly Mosely and Mike Benavides. Defendant argues that Plaintiff's insinuation that these two other employees were discharged in retaliation for alleged protected activity is baseless. Specifically, Defendant contends that Plaintiff asserts that he, Mosely and Benavides were all terminated because they were listed as authors on a letter submitted to General Manager Randy Smith in January 2003. Defendant argues that Plaintiff has no evidence to support his version of the facts other than his own speculation and conclusory assumptions as to the reasons for Benavides' and Mosely's terminations. Defendant asserts that Plaintiff has admitted that he has no evidence or knowledge concerning the circumstances

4

surrounding the discharges of Mosely and Benavides. As such, Defendant argues that Plaintiff's anecdotal testimony is inadmissible. In contrast, Plaintiff argues that both Mosely and Benavides worked in Plaintiff's unit, and both were discharged after complaining to Randy Smith that Defendant had failed to interview them in connection with Kenneth Barnett's race discrimination complaint. Because the Court finds that evidence concerning discrimination against other members of Plaintiff's protected class is relevant to establish racial animus, the Court will overrule Defendant's objections.

Next, Defendant seeks to exclude all references to Terry Albrecht's complaint to the EEOC and the EEOC's finding, including Albrecht's affidavit, the complaint to the EEOC, and Albrecht's right to sue letter. Plaintiff argues that these exhibits are highly probative of Defendant's unlawful motive. Plaintiff contends that because he agreed to testify on behalf of Albrecht, Defendant retaliated against him. To the extent the affidavit indicates that Plaintiff testified on behalf of Albrecht during the EEOC investigation and had agreed to testify on her behalf in a subsequent trial, the Court finds this evidence is relevant. However, the EEOC complaint itself and the subsequently issued right to sue letter are not probative of any issue relating to Plaintiff's retaliation claim.

Defendant also seeks to exclude a typewritten statement prepared by Kenneth Barnett on the grounds that the statement is not sworn and constitutes inadmissible hearsay. Defendant contends that the letter is speculative and unfairly prejudicial. Plaintiff argues that Barnett's letter is a formal complaint directed at Defendant, and specifically Randy Smith, about race discrimination in the company, and, as such, constitutes a business record under Federal Rule of Evidence 803(6). However, Rule 803(6) requires that a business record be "kept in the course of regularly conducted business activity." A statement submitted to Defendant, unless it was done so through a regulated complaint submission procedure established by Defendant, is not a business record. The letter is properly considered hearsay not covered under any exception if it is submitted to prove the truth of the matter asserted therein.

In his surreply in opposition to Defendant's motion for summary judgment, Plaintiff maintains that Barnett's statement is not being offered to show the truth of the matter contained within the statement, but rather to establish that "when [Plaintiff] wrote to Smith on January 9, 2003 . . . Defendant was on notice that [he was] engaged in protected activity." Plaintiff seems to argue that the Barnett statement is being offered to establish that Defendant knew that Plaintiff's January 9, 2003 letter was related to Barnett's complaints of racial discrimination and was therefore protected activity. If the statement is offered for this purpose it is not hearsay. However, because Defendant does not dispute that the letter prepared by Plaintiff, Mosley, and Benavides on January 9, 2003 was protected activity, the statement prepared by Kenneth Barnett is irrelevant to the present claim. Furthermore, because Plaintiff does not need the Barnett statement to establish that Defendant was "on notice" that Plaintiff's letter of January 9, 2003 was protected activity, the histrionic character of the Barnett statement is unduly prejudicial.

Finally, Defendant seeks to exclude all documents which were produced after the discovery cut-off, including an errata sheet attached to the deposition of Kenneth Barnett which contained six pages of documents not previously produced or mentioned at his deposition. Defendant contends that these documents are the same documents which Plaintiff produced a month after discovery had closed. Defendant argues that the documents should be excluded because they were not produced until after discovery had closed and because the errata sheet to which the documents were attached does not comply with the requirements of Federal Rule of Civil Procedure 30(e). In response, Plaintiff argues that the documents were produced by Barnett, an employee of Defendant, in response to a specific question he was asked during his deposition. Based on the question, Barnett produced six pages of documents, including a complaint he filed about a co-worker being allowed to sleep on the job. The errata sheet clearly shows that the documents were produced in response to a question asked by Defendant regarding whether Barnett had ever reported incidents of other employees

sleeping. The documents produced support his answer that he had, in fact, seen others sleeping. Additionally, there is no evidence to suggest that Plaintiff knew about or possessed these documents prior to the date Barnett produced them, which occurred after his deposition and, thus, after the end of discovery. The Court finds that these documents are admissible.

**II.     Motion for Summary Judgment**

The Court now turns to the motion for summary judgment. To prevail on a claim of race discrimination under Title VII where there is no direct evidence of discrimination such as in this case, a plaintiff must first make a prima facie showing of discrimination. To establish a prima facie case of race discrimination in a discriminatory discharge claim, the plaintiff must prove that: (1) he belongs to a protected group under Title VII; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated differently or less favorably than others similarly situated. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. Univ. of Tex. Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). A plaintiff must establish all four elements of the case in order to prove that he was treated differently. *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir.1999). The Title VII burden shifting analysis also applies to claims of retaliation. 42 U.S.C. § 2000e-3(a); *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *Jaynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000); *see also Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995).

Once a prima facie case is established, a presumption of discrimination or retaliation arises. *See Dollis*, 77 F.3d at 782; *Pratt*, 247 F.3d at 606. Thereafter, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the alleged discriminatory conduct the employee is challenging. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). This burden is one of production, not persuasion; therefore, "the employer need not prove that it was actually motivated by its proffered reason." *Id*. Simply put, if the employer meets its burden, "the presumption of

7

discrimination created by the plaintiff's prima facie case falls away." *Id*. The burden of persuasion then shifts back to the plaintiff to demonstrate that his employer's articulated reason was merely a pretext for unlawful discrimination. *Id*. The court's factual inquiry then becomes more specific. *Id*. To avoid dismissal by summary judgment at this stage, the Fifth Circuit Court of Appeals has directed that,

> the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination. In other words, after a defendant employer has met its burden of production, an employee plaintiff . . . must . . . demonstrate that there is a material issue of disputed fact as to discrimination. . . . In some instances, proof of pretext alone will suffice.

*Id*. (footnotes omitted).

Defendant asserts that Plaintiff cannot offer any evidence to support either the fourth element of his prima facie case or overcome Defendant's legitimate, nondiscriminatory reason for his discharge. Defendant asserts that Plaintiff has admitted that he did not believe that Ramirez, who is also Hispanic and was the person to first accuse Plaintiff of sleeping, bore any racial animus against him. It further alleges that Plaintiff has also never heard, directly or indirectly, either Smith or Ramirez say anything derogatory about him or about Hispanics in general. Defendant maintains that Plaintiff bases his belief that Smith harbored animus against Hispanics on the fact that Plaintiff, along with two other minority employees, submitted a letter to Smith seven months prior to his discharge complaining that the promotion process for a shift supervisor position was unfair. Defendant contends, however, that this letter directed to Smith is not probative of Smith's opinion of Hispanics generally or Plaintiff specifically. Moreover, Defendant maintains that although the other two employees were terminated, they were terminated at different times and under different circumstances than Plaintiff. Defendant contends that Plaintiff admits he has no idea what role, if any, Smith played in those terminations, other than approving their discharges as he does all employee discharges.

The Court finds that Plaintiff has created a prima facie case by alleging that there are others outside the protected class who were not terminated for sleeping on the job. Plaintiff's summary

8

judgment evidence suggests that other individuals, including Randy Kelly, John Ortmann, Bevis Michael Warner, John Paul Humphrey, Dean Holford, and Susie Taylor were caught sleeping on the job by their supervisors or other members of their shift but were not terminated. *See generally, deposition testimony of Michael Benavides and Kenneth Barnett.* Although Defendant presents affidavit testimony contradicting Plaintiff's evidence, there is sufficient evidence to establish a prima facie case on this issue.

As a legitimate, nondiscriminatory basis for its decision to terminate Plaintiff, Defendant contends that it had a good faith belief that Plaintiff had been asleep at work in contravention of company policy. Defendant asserts that Plaintiff's supervisor and two other employees witnessed him sleeping. Defendant alleges that, in accordance with company policy, Plaintiff was terminated for sleeping on the job. The Court finds that this is a legitimate, non-discriminatory basis and therefore the burden shifts back to Plaintiff to establish that this basis is pretextual.

To establish pretext, Plaintiff contends that even if he was sleeping on the job, others not in his protected class had been caught sleeping on the job and had not been disciplined. However, Defendant's summary judgment evidence suggests that six employees have been terminated for sleeping on the job since August 2002. Four of those individuals have been white, and two were Hispanic. Furthermore, Plaintiff in his deposition alleged that two other Hispanic operators were caught sleeping on the job but merely received warnings. *See Deposition of Ray Guajardo*, p 76, ll.2-7. Although Plaintiff again notes that other non-Hispanics were not terminated for allegedly sleeping on the job, the Court finds that Plaintiff has not established any material fact issue to assert that Defendant's legitimate, nondiscriminatory reason was pretextual based on race. While Plaintiff presents evidence which may suggest that other, non-Hispanics were treated differently, the evidence also establishes that in enforcing its policy, Defendant has terminated non-Hispanics for sleeping on the job. As such, although the remaining summary judgment evidence may establish that Defendant's

9

reason was pretextual for terminating Plaintiff, there does not exist, within the record, sufficient evidence to establish that that motive was racial in nature. The Court, therefore, finds that summary judgment is appropriate as to the racially discriminatory discharge claim.

The Court now turns its attention to Plaintiff's claim for retaliation. Defendant concedes, as with the race discrimination claim, that Plaintiff is a member of a protected class and that he suffered an adverse employment action. However, Defendant argues that Plaintiff cannot establish a causal connection between the protected activity and the adverse employment action. To support this contention, Defendant argues that the proximity between Plaintiff's protected activity and his termination is insufficient to create a prima facie case. Defendant also contends that Plaintiff's alleged comparator information is not supported by the evidence and that the comparators are not similarly situated. Additionally, Defendant maintains that it had a legitimate non-discriminatory reason for terminating Plaintiff's employment because he was caught sleeping on the job in violation of company policy.

First, Defendant alleges that proximity in time is not enough to establish a causal connection between the adverse employment action and the protected activity. Defendant argues that the mere fact that some adverse action is taken after an employee engages in protected activity is not always enough to establish a prima facie case. *See Roberson v. Alltel Info. Srvcs.,* 373 F.3d 647, 655 (5th Cir. 2004). In *Evans v. Houston*, however, the Fifth Circuit Court of Appeals found that the fact that only five days had elapsed between the protected activity and the adverse employment action was sufficient to meet the causal connection requirement. 246 F.3d 344, 354 (5th Cir. 2001). The appellate court has further clarified this position by stating that an inference of a causal connection may be drawn where the plaintiff can demonstrate the employer's awareness of the protected activity and the temporal proximity between that activity and the allegedly retaliatory action. *Id.* Although Defendant argues that Rodriguez, who initially accused Plaintiff of sleeping on the job was not aware

of Plaintiff's protected activity, Plaintiff points out that he was not terminated for sleeping on the job until after he informed Smith that he had engaged in protected activity and asked Smith to investigate his claim of retaliation. It was only after this conversation with Smith that the decision to terminate Plaintiff for allegedly sleeping on the job was finalized. As such, the Court finds that there is sufficient evidence to establish a prima facie case for retaliation.

Defendant alleges that its decision to terminate Plaintiff's employment because he was sleeping on the job is a legitimate, nondiscriminatory reason. It further alleges that Plaintiff's evidence concerning comparators is not sufficient because the individuals he names were all allegedly seen sleeping prior to Defendant's reinstitution of the sleeping policy in August 2002. Additionally, Defendant argues that Plaintiff's evidence of other individuals allegedly sleeping falls short of the standard required to infer retaliation because either 1) he cannot identify the person involved at all, 2) his evidence is nothing more than inadmissible hearsay, or 3) he lacks any evidence that the decision-makers involved in his discharge (in this case Smith and the members of the human resources department) knew about these other employees allegedly seen sleeping.

The summary judgment evidence submitted by Plaintiff shows that there were others who had allegedly been seen sleeping on the job after the reinstitution of the policy. At least one individual, Jimmy Boyd, was formally warned against the appearance of being asleep on the job. *See Written Warning to Jimmy Boyd*, Plaintiff's Exhibit 4. The written warning received by Boyd is signed by Darren Drastata from the human resources department and reveals that the incident occurred in September 2002, a full month after the sleeping policy was reinstated. Defendant argues that, in Boyd's case, there was insufficient evidence to show that he had been sleeping on the job, and that this was the reason he received a warning rather than being terminated. In contrast, it argues, the evidence against Plaintiff included testimony from Ramirez and at least one other witness that he had, in fact, been sleeping on the job. The Court finds, however, this is a question of fact to be

11

determined by the jury. If the jury determines that the policy was being selectively enforced, then it may also infer that Defendant's reasons for terminating Plaintiff's employment were motivated by something other than its stated purpose—in this case, retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (holding that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation). The Court finds, therefore, that summary judgment is not appropriate as to the retaliation claim.

## Conclusion

For the reasons set forth above, the Court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED in part and DENIED in part. Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence should be GRANTED in part and DENIED in part.

It is so ORDERED.

Signed this 8th day of September, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE